This case on today's docket is the case of People of the State of Illinois v. Raymond Moss. And we have Mr. Alan Andrews for the appellant and Ms. Whitney Atkins for the appellee. And you may begin Mr. Andrews. Please record and counsel. Alan Andrews from the State Appellate Defender representing Mr. Raymond Moss in this case. I'd like to start by discussing Issue 1 and if I have time a brief discussion of Issue 3. I stand on my brief for the other issues and what sort of questions. Issue 1 is the amendment of the indictment issue. There's been much discussion, I guess, about whether this is a formal or substantive indictment and it really doesn't make any difference. Even if it's a formal indictment, if there's prejudice to Mr. Moss resulting from the indictment, this court has to reverse. So I'm going to confine my argument to whether or not Mr. Moss was prejudiced by this amendment, whether it was formal or substantive. The indictment originally alleged that Mr. Moss had achieved digital penetrations by the use of force. During the trial, during the defense case, the state amended the indictment to allege that he either used force or the threat of force. During the trial, Mr. Moss presented what essentially was a two-pronged defense. His first and primary defense was that if the digital penetrations occurred, they did not occur by force. And he also argued that the digital penetrations did not occur, that the complaint at YH was lying about the whole thing. Counsel focused on the defense that no force was involved because that's, for lack of a better word, dispositive. If he can prove that there was no force involved in the penetrations, he doesn't have to worry about proving they didn't occur. He wins because they weren't forcible. It wasn't criminal sexual assault. But the amendment of the indictment during the trial eliminated Mr. Moss's no-force defense in the sense that it was no longer dispositive of the issue because now, even if Mr. Moss proved that there was no force involved in these penetrations, the state could convict him of criminal sexual assault as long as it could show that there was a threat, a threat of the use of force. And I think what happened here is the belated amendment deprived Mr. Moss of a defense attorney who could make rational decisions concerning his defense. I think it's evident that defense counsel would not have crippled the it-did-not-occur defense as he did in an effort to bolster the defense that no force was used. Now, the reason the it-did-not-occur defense was crippled was because to further the no-force defense, defense counsel acquiesced and even wanted Officer Murray, who Y.H. made an out-of-court complaint to about these alleged events. Counsel acquiesced to Officer Murray reading his police report detailing what Y.H. had told Officer Murray about the alleged assaults. And when the trial court pointed out that this was obviously hearsay, it should be inadmissible, trial counsel explained that I'm okay with that. I don't mind that it's inadmissible hearsay because I want Officer Murray to say everything that Y.H. said because it shows she never complained that Mr. Moss used force. So Officer Murray's, Y.H.'s entire out-of-court statement to Officer Murray detailing the alleged defense came in in an effort to win on the issue that no force was involved. The reason that that crippled the defense once the no-force was no longer a viable defense was because then all counsel really had is the events didn't occur. Well, you know, to prove that the events didn't occur, he's got to prove that Y.H. is a liar. Well, it's hard to prove that Y.H. is a liar once you've put in an entire consistent statement made a couple of days after the alleged assault. You know, the whole reason you don't allow these prior consistent statements is that corroboration by repetition preys on a natural human failing to believe that which is, you know, repeated the most. And, you know, credibility should depend not upon how often somebody's statement is repeated, but it should depend on the inherent reliability of the statement itself. The corroboration was particularly prejudicial in this case because Y.H. had a lot of credibility issues. First of all, mere hours after the alleged sexual assault, Y.H. stopped by Mr. Moss' niece's house and complained that she'd been beaten. She never said that she'd been sexually assaulted. Next, Y.H. drove to Carbondale from Harrisburg, this is just a short time later, and went to the emergency room where she was examined by a nurse and a physician. But she still didn't complain that she'd been sexually assaulted. All she said was that she'd been beaten. Now, when she talks to Officer Murray the next day, that's when she complains that she's been sexually assaulted. So, Officer Murray's prior consistent statement goes directly to the heart of Y.H.'s failure to complain that she'd been sexually assaulted. Her complaint only that she'd been beaten. Another credibility issue, you know, another reason why it was bad to corroborate Y.H.'s testimony, you know, there was a lot of DCFS involvement in this case. DCFS had taken Y.H.'s children away from her a couple of months before this neglect. And Y.H. thought that she was going to get her children back, so she went into court and she appeared with Raymond Moss, and at that point she was told, you're not getting your children back as long as you've got anything to do with Mr. Moss. So, you know, now she's got a motive. She wants to get rid of Mr. Moss or at least break up with him. But, I mean, look what happened in this case. Even after she's told she can't get her children back from DCFS unless she has nothing to do with Raymond Moss, she comes over and she spends this period of time with Mr. Moss when this alleged assault occurred. She can't stay away from Raymond Moss for whatever reason. On the other hand, if she can get Mr. Moss sent to prison, that problem is solved. And I would point out that it was only one month after Y.H. finally went and testified before the grand jury to get this indictment, it was only one month after that that she did, in fact, get her children back. One more credibility thing. You know, Y.H. complained that she was horrifically beaten by Mr. Moss. He stomped on her head. He hit her brutally was her word. Hit her as hard as he could. That he threw something at her and opened a cut that gushed blood. Now, there were photos in this case, and there was testimony that the photographs weren't that great. But if you look at them, it's not even close. I mean, they don't show anything remotely resembling the type of injuries you would expect from Y.H.'s testimony. You know, she's plainly exaggerating what had happened or a lie. You know, Dr. DenVito himself said that there was no injury that she had that gushed blood. So, you know, Y.H.'s credibility was really at issue in this case. And it's unfortunate that because the indictment only said that Mr. Moss could be convicted based on the use of force, that counsel chose to focus on that defense, that no force was used, thereby crippling the it-did-not-happen defense. And again, the effect of this belated amendment was to deprive Mr. Moss of an attorney who could make rational decisions concerning how to conduct his defense. You have to remember, when this occurred, counsel said, I'm surprised. Counsel asked for a continuance. That's a major thing in some of the state cases. One of them points out, you know, there can't have been a surprise. Counsel didn't ask for a continuance. Here, counsel asked for a two-day continuance. He wanted to research the subject to see if the amendment was proper. At what point exactly did he find out that there was going to be an amendment? It was amended during the defense case on the fourth day. How far into that case was that? It was early in the defense case. It was before Mr. Moss, but it was on the fourth day of evidence being presented. So he'd already gone through his strategy when he dealt with all of the state witnesses. So, again, counsel was surprised. The defense was ruined. Now, very briefly, on Issue 3, that's the one where the medical records came in. Their medical records are absolutely inadmissible, a hearsay, and that's how they were presented as business records, but they're inadmissible. The state says that doesn't matter because the information contained in them could have come in under another exception. Well, the key point is could have come in. It didn't. The state is obligated to present its evidence in an admissible form. It didn't present it under the exception of state sites. It presented it as an inadmissible business record, and that matters because that was double hearsay. What happened is the other witness complained to somebody, somebody wrote that down, and the jury heard her. Under the exception of state sites, while you can't cross-examine the declarant, you can cross-examine the person who heard the declarant without a court statement. Thank you. Thank you, Mr. Andrews. You'll be able to rebut Ms. Adkins. May it please the court. Mr. Andrews, my name is Whitney Adkins for the state of Illinois. The state will first be addressing the first three issues that the defendant has raised in his opening brief, but it is more than prepared to answer questions regarding the remainder of the issues raised in the brief. The criminal sexual assault statute by which the defendant was charged with committing states that a person commits criminal sexual assault if that person commits an act of sexual penetration and uses force or threat of force. Here, the state merely sought to amend the sexual assault counts in the indictment to add the language or threat of force. Say again. The state sought only to amend the indictment to include the language or threat of force. That's it. This amendment was proper for three reasons. First, because it was formal and did not broaden the scope of the evidence which could prove the defendant's guilt. Second, it did not prejudice the defendant. And third, he could not have been surprised. Turning towards to the amendment being formal. In the state adding threat of force, it merely corrected a scrivener's error. In the context of the criminal sexual assault statute, it refers to use of force or threat of force in quotations as a singular term. It's stated in the conjunctive within the context of the statute. And the reason for this is presumably because threat of force is inherent in force. In fact, the Illinois Supreme Court has held that to prove force is to prove non-consent. It has defined force as non-consent. Therefore, because threat of force is inherent in force, adding the words or threat of force could not have added another element that was not already stated in the original indictment. It merely stated explicitly what was implicit. Hence, the amendment did not broaden the conduct that could support the conviction. In his response brief, the defendant cites people versus her. Which held that a complaint was void where it pled distinct acts stated in the disjunctive which a gambling statute could be violated. There, the court found that alleging the various means in the alternative did not sufficiently apprise the defendant of the nature of his alleged illegal conduct. So essentially, the complaint in her was void because it did not adequately specify and inform the defendant of the conduct he was being charged with. The use of the accent in disjunctive created an uncertainty of the conduct he was being charged with. Well, that's not on point. And that's not applicable here because, first of all, use of force or threat of force is again referred to in the conjunctive within the context of this statute. And secondly, even assuming arguendo that force or threat of force is disjunctive, it did not create any uncertainty as to what the defendant was being charged with committing here. So secondly, the defendant cannot meet his burden of showing that he was surprised. The amendment again only served to more closely follow the language of the statute. What is more surprising, what is surprising about that? The indictment following the language of the statute exactly. Also, the standard I.P.I. during instruction for criminal sexual assault, which the defendant was privy to prior to the trial, also contained the language by use of force or threat of force. And then lastly, the defendant should not have been surprised because threat of force is a type of force. Finally, the defendant cannot prove that he was prejudiced from the amendment. The defendant claims that he was prejudiced because his strategy was to prove that the defendant only used force necessary to insert his fingers into the victim's vagina and anus. And that this strategy would have been successful. But that was not his predominant strategy in this trial. His strategy was that the sexual assault unequivocally did not happen. And he counters with the contention that even if the sex acts did occur, they did not happen by force. Again, threat of force is just a type of force. This couldn't have impeded his defense that the sexual assault did not, that even if it did happen, it did not happen by force. And he complains that Officer Murray's testimony corroborated the victim's statement that the sexual acts were committed by threat of force. But Officer Murray's testimony, even aside from the amendment, if the amendment had never occurred, Officer Murray's testimony proved that, or established that the victim, that the defendant had committed the sexual assault acts by force. He spoke to the fact that the defendant had punched the victim in the head repeatedly throughout the night, had stomped on her, that she had requested him to stop the sexual acts, and he did not stop. This is all criminal sexual assault by force. Not even by threat of force. That is by force. And that is what Officer Murray's testimony spoke to. Now the defendant next contends that if this argument fails, this court should find that his trial counsel was ineffective because he should have known that the indictment was subject to an amendment. But defendant cannot pass the prejudice prong of the familiar Strickland test. He cannot prove that the amendment affected the judgment. Because again, the amendment could not have been detrimental to the defendant's case if his overall theory was that the sexual assault did not happen. The only impact that the amendment had, the defendant can point to, is Officer Murray's testimony, that Officer Murray's testimony corroborated the victim's testimony. But prior consistent statements do not automatically warrant reversal. Reversal is warranted where there is reasonable probability that the jury would have acquitted the defendant absent the statements. The evidence here was not closely balanced. And Officer Murray's testimony could have not been what, without absent Officer Murray's testimony, it could not be said that the defendant would have been acquitted. And finally, the defendant claims that his trial attorney was again ineffective because he failed to object to the admittance of JB's medical records on the ground that they were inadmissible hearsay. But the criminal code has an exception for hearsay evidence that is revealed during medical treatment. The statute allows for details of how, when, and where the sexual acts occurred. And the assumption underlying this presumption is that the desire to receive treatment outweighs any motives to lie. The people acknowledge that the identification of defendant's name may have been outside the boundaries of the statute's exception. But we submit to you that you should find this very trivial error harmless. Under People v. Cassell, a case signed by a defendant. So for these four wide reasons, the people ask that you affirm the defendant's conviction for sexual assault. Thank you, Ms. Edmonds. Mr. Andrews, regarding? Very briefly, going back to the amendment issue, as far as it's a formal thing, again, that doesn't matter as long as there was prejudice or surprise to the defendant. You look at the state's cases, they all say there's no reversible error because there's no prejudice and no surprise. We have that here. Secondly, the state has argued that it's a formal amendment because it didn't broaden the evidence of sustaining the conviction. But I think it obviously did. At first, the only thing that would sustain the conviction was whether or not Mr. Moss used force. Now, the conviction can be sustained if he used force or if he threatened the use of force. To me, it's obvious that the amendment broadened the type of evidence that could support the conviction, and therefore it's a substantive and reversible error amendment. The state's argument about the threat of force is inherent in the use of force. That doesn't matter because force is not inherent in the threat of force. Originally, he could only be convicted if it was proved he used force. All right, so you can see that maybe that includes the threat of force. That's fine. But now he can be convicted if he didn't use force but if he did use threats, and the use of force is not inherent in the use of threats. So now the state has something easier to prove. They don't have to prove force. They can only prove threats. So it's not the same thing. The fact that threats might have been inherent in force doesn't matter because force isn't inherent in threats. As for the rest of the state's arguments, I think that they were addressed in my reply brief, and unless there are any questions, thank you very much, and I ask that Mr. Moss be granted a new trial. Thank you, Mr. Andrews. Thank you, both of you, for your briefs and your arguments. We'll take them in under advisement and under a related course.